Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| LIBERTY MOBILE PUERTO RICO, INC.<br><br>Recurrente<br><br>V.<br><br>JUNTA DE SUBASTAS DEL DEPARTAMENTO DE EDUCACIÓN DE PUERTO RICO<br><br>Parte Recurrida | TA2025RA00132<br><br>Consolidado con | *Revisión de Decisión Administrativa* procedente del Departamento de Educación<br><br>RFP NÚM. PRDE-OC2025-001<br><br>Sobre:<br>"Para la Adquisición de Equipos y Servicios de Internet de Red Amplia, Filtrado de Contenido, Telecomunicaciones, y Equipos de Puntos de Conexión WIFI para el Departamento de Educación de Puerto Rico". |
| T-MOBILE PUERTO RICO, LLC<br><br>Recurrente<br><br>V.<br><br>JUNTA CENTRAL DE SUBASTAS DEL DEPARTAMENTO DE EDUCACIÓN DE PUERTO RICO<br><br>Recurrida | TA2025RA00133 | *Revisión de Decisión Administrativa* procedente del Departamento de Educación<br><br>RFP NÚM. PRDE-OC-2025-001 and E-Rate Form 470 #250019131 for the "Procurement of Wide Area Network, Internet, Content Filtering, Telecommunications, and Wi-Fi Hotspot Equipment and Services for the Puerto Rico Department of Education"<br><br>Sobre:<br>Revisión Judicial |

Panel integrado por su presidenta; la Juez Lebrón Nieves, el Juez Pagán Ocasio y la Jueza Santiago Calderón[1]

*Lebrón Nieves, Juez Ponente*

---

[1] De conformidad con la Orden Administrativa Número OATA-2025-182, emitida el 18 de septiembre de 2025, debido a la inhibición de la Juez Álvarez Esnard, se designa en sustitución a la Jueza Santiago Calderón.

**SENTENCIA**

En San Juan, Puerto Rico, a 19 de septiembre de 2025.

El 5 de agosto de 2025, Liberty Mobile Puerto Rico Inc. (en adelante, Liberty), compareció ante nos mediante recurso de revisión judicial, identificado con el alfanumérico TA2025RA00132. Al próximo día, 6 de agosto de 2025, T-Mobile Puerto Rico, LLC (en adelante, T-Mobile) presentó otro recurso de revisión judicial, con designación alfanumérica TA2025RA00133. En ambos recursos, las recurrentes nos solicitan la revisión del *Notice of Award – Amended,* emitido y notificado el 24 de junio de 2025, por la Junta Central de Subastas del Departamento de Educación del Gobierno de Puerto Rico (Junta de Subastas). En virtud del aludido dictamen, la Junta de Subastas adjudicó la buena pro del *RFP No. PRDE-OC-2025-001 and E-Rate Form 470 #250019131 for the Procurement of Wide Area Network, Internet, Content Filtering, Telecommunications, and Wi-Fi Hotspot Equipment and Services for the Puerto Rico Department of Education"* (RFP) a favor de la Puerto Rico Telephone Company (Claro) y rechazó en su totalidad la propuesta de T-Mobile.

Adelantamos que, por los fundamentos que expondremos a continuación, se confirma la determinación recurrida.

**I**

Conforme surge del expediente, el 3 de febrero de 2025, la Junta de Subastas publicó un *Sealed Request for Proposals RFP NÚM. PRDE-OC-2025-001* and *E-Rate Form 470 #250019131* (RFP), para la adquisición de diversos servicios y equipos destinados a las escuelas y otras facilidades no educativas del Departamento de Educación de Puerto Rico (DEPR).[2] En detalle, el RFP contemplaba, bajo la primera categoría, una red de área amplia *(WAN,* por sus

---

[2] Aunque ambos recursos contienen sus respectivos apéndices, para una mejor comprensión, haremos referencia al apéndice del recurso con designación alfanumérica TA2025RA00132. Así pues, *véase,* apéndice 7 del recurso de revisión judicial, págs. 37-165.

siglas en inglés), servicio de internet, filtrado de contenido y telecomunicaciones y, bajo la segunda categoría, equipos y servicios de internet portátil de emergencia y de préstamo o sustitución.

El RFP contenía las instrucciones, requisitos, términos y condiciones generales para participar del proceso de licitación. En ese contexto, indicaba que, la fecha límite para la presentación de propuestas sería el 5 de marzo de 2025, en o antes de las 11:00am. Además, disponía que, cada propuesta debía ser presentada en tres (3) formatos distintos, a saber: (1) el documento original en físico, (2) una copia exacta en un dispositivo USB y, (3) una copia electrónica cargada a través de la página web habilitada. Cabe señalar que, según el RFP, el incumplimiento con la presentación de la propuesta en cualquiera de los tres (3) formatos mencionados conllevaría la descalificación automática del proponente.[3]

Por otro lado, como parte de los requisitos mínimos, el RFP disponía que, los proponentes debían: (1) participar obligatoriamente en una conferencia virtual, previa a la presentación de propuestas, a celebrarse el 7 de febrero de 2025; (2) estar inscritos en el Registro Único de Licitadores (RUL), (3) poseer un número válido de proveedor de servicios (*SPIN*); (4) haber participado en el programa *E-Rate* durante los últimos cinco (5) años y, (5) estar registrados en el *System for Award Management* (*SAM*) al momento de firmar el contrato.

Adicionalmente, el RFP exigía la presentación obligatoria de una serie de documentos, so pena de descalificación.[4] Entre estos, se encontraba un resumen del proponente sobre su experiencia con el programa *E-Rate*, el cual debía incluir su *SPIN*, los años de

---

[3] *Íd.*, pág. 51.
[4] *Íd.*, pág. 154.

experiencia y, la cantidad de fondos recibidos bajo el programa *E-Rate* durante los últimos cinco (5) años.[5]

Según lo dispuesto en el RFP, la evaluación de propuestas se llevaría a cabo en dos fases, y estaría a cargo de un Comité Evaluador nombrado por el Secretario del DEPR. Mediante la primera fase, se revisaría si las propuestas cumplían con los requisitos mínimos exigidos. A través de la segunda fase, se llevaría a cabo una evaluación técnica, conforme a los siguientes criterios[6]:

| EVALUATION CRITERIA | WEIGHT |
|---|---|
| PRICE OF ELIGIBLE PRODUCTS AND SERVICES | 30% |
| Past performance on comparable size and scope contracts with the Department and/or other comparably sized school systems, government agencies or businesses over the past 5 years | 25% |
| Proposer E-Rate expedience **during** the past 5 year | 20% |
| Responsiveness of proposal to RFP terms, conditions and required submittals, and quality of proposed solutions and products | 15% |
| PRICE OF INELIGIBLE PRODUCTS AND SERVICES | 10% |
| TOTAL: | 100% |

Resulta meritorio destacar que, previo a la fecha límite para la radicación de propuestas, la Junta de Subastas habilitó un periodo para que los proponentes tuviesen la oportunidad de formular preguntas relacionadas al RFP.[7] Como parte de dicho proceso, y en lo pertinente, la compañía DM Wireless LLC consultó si la participación en el programa *E-Rate* constituía un requisito obligatorio para poder participar del proceso de licitación.[8] A dicha interrogante, la Junta de Subastas respondió como sigue:

> Yes, it is mandatory that proposers have participated in the E-Rate program as a service provider within the past five (5) years. This is a requirement, considering E-Rate a very complex program with substantial participation requirements for service providers, and the Wide Area Network, Internet Loaner Wi-Fi hotspot program will all be funded in large part under the E-Rate program. **Although proposers may rely on partners or subcontractors to establish experience performing the services listed in the RFP, including E-Rate**

---

[5] *Íd.*
[6] *Íd.*, pág. 60.
[7] *Íd.*, pág. 49.
[8] Apéndice 8 del recurso de revisión, pág. 168.

**funded services, the proposer responding to the RFP must also have actual E-Rate experience**. (Énfasis nuestro).[9]

Así las cosas, el 5 de junio de 2025, la Junta de Subastas emitió un *Notice of Award – Amended*.[10] Conforme surge de este, para el 5 de marzo de 2025, la Junta de Subastas recibió cuatro (4) propuestas, presentadas por (1) Liberty[11], (2) Claro[12], (3) T-Mobile[13] y (4) CDW Government LLC (CDW). De estas cuatro propuestas, solo las presentadas por Liberty y Claro superaron la primera etapa de evaluación.

En cuanto a la propuesta de CDW, la Junta de Subastas sostuvo que, el documento original no fue recibido físicamente previo al vencimiento del plazo establecido. Por otro lado, con respecto a la propuesta de T Mobile, esgrimió que, esta había sido rechazada puesto que, (1) la copia incluida en la memoria USB no era idéntica al documento original; (2) T-Mobile no cargó la copia electrónica a la página web y, (3) tampoco proveyó información sobre su experiencia en el programa *E-Rate* durante los cinco (5) años anteriores.

En atención a lo anterior, únicamente las propuestas de Liberty y Claro pasaron a la segunda fase de evaluación. Tras dicho proceso, la Junta de Subastas otorgó las siguientes puntuaciones en cada categoría, para cada criterio, a cada proponente:

**CATEGORY 1 – WAN, INTERNET, CONTENT FILTERING, AND TELECOMUNICATIONS**

|  |  | LIBERTY | | PRTC | |
| --- | --- | --- | --- | --- | --- |
| CRITERIA | WEIGHT | RATING | SCORE | RATING | SCORE |
| #1 | 30% | 10.00 | 30.00% | 7.00 | 21.00% |
| #2 | 25% | 5.31 | 13.28% | 8.24 | 20.00% |
| #3 | 20% | 1.00 | 2.00% | 10.00 | 20.00% |

---

[9] *Íd.*

[10] Apéndices 5 y 6 del recurso de revisión judicial, págs. 22-28 y 29-36, respectivamente.

[11] Apéndices 9-38 del recurso de revisión judicial, págs. 175-646.

[12] Entrada número 3 del recurso con designación alfanumérica TA2025RA00133 en el Sistema Unificado de Manejo y Administración de Casos del Tribunal de Apelaciones (SUMAC TA), anejo 3.

[13] *Íd.*, anejo 4.

| | | LIBERTY | | PRTC | |
|---|---|---|---|---|---|
| #4 | 15% | 9.89 | 14.84% | 9.89 | 14.84% |
| #5 | 10% | 10.00 | 10.00% | 5.00 | 5.00% |
| | **100%** | 36.20 | 70.11% | **40.13** | **81.44%** |

## CATEGORY 2 – WIRELESS BROADBAND SERVICES (WI-FI HOTSPOTS)

| | | LIBERTY | | PRTC | |
|---|---|---|---|---|---|
| **CRITERIA** | **WEIGHT** | **RATING** | **SCORE** | **RATING** | **SCORE** |
| #1 | 30% | 9.00 | 27.00% | 10.00 | 30.00% |
| #2 | 25% | 7.31 | 18.29% | 7.28 | 18.19% |
| #3 | 20% | 1.00 | 2.00% | 10.00 | 20.00% |
| #4 | 15% | 9.57 | 14.35% | 9.57 | 14.35% |
| #5 | 10% | 10.00 | 10.00% | 1.00 | 1.00% |
| | **100%** | 36.88 | 71.63% | **37.84** | **83.54%** |

En virtud de dichas puntuaciones, la Junta de Subastas adjudicó la buena pro a Claro. Conforme surge del *Notice of Award*, la Junta de Subastas razonó que, Claro cumplió con todos los requisitos esenciales y mandatorios del RFP. Asimismo, sostuvo que, su propuesta era la que mejor se ajustaba a las necesidades del DEPR.

En cuanto a la propuesta de Liberty, la Junta de Subastas reconoció que, en ambas categorías, bajo el criterio número uno, esta presentó el precio más bajo para los productos y servicios no subvencionables entre los proponentes cualificados. No obstante, resaltó que, dichos precios resultaban irrazonablemente más baratos que los precios del mercado.

Por otra parte, la Junta de Subastas advirtió que, Liberty no presentó evidencia sobre su experiencia en servicios *WAN*, filtrado de contenido ni telecomunicaciones, sino que, se limitó a proveer información vinculada únicamente a servicios de internet. De igual modo, indicó que, Liberty tampoco presentó experiencia propia con el programa *E-Rate*, pues la información provista correspondía a su subcontratista, Truenorth. Así pues, la Junta de Subastas dispuso que, al no constituir experiencia propia de Liberty, la información no fue tomada en consideración en el proceso de evaluación.

Inconformes con la determinación de la Junta de Subastas, el 4 de abril de 2025, tanto Liberty como T-Mobile presentaron solicitudes de reconsideración ante la Junta Revisora de Subastas de la Administración de Servicios Generales del Gobierno de Puerto Rico (Junta Revisora).[14]

En primer orden, Liberty sostuvo que, la determinación de la Junta de Subastas había estado basada únicamente en el monto facturado por cada proponente al programa *E-Rate* durante los cinco (5) años anteriores, aun cuando dicho factor no había formado parte de los criterios incluidos en el RFP. Añadió que, aun en el supuesto de que dicho factor hubiese estado contemplado en el RFP, este violentaba las disposiciones de la Ley Núm. 73 de 2019, conocida como *Ley de la Administración de Servicios Generales para la Centralización de las Compras del Gobierno de Puerto Rico de 2019*, 3 LPRA § 9831 *et al.* En detalle, explicó que, el Artículo 33 del referido estatuto, 3 LPRA § 9834i, impedía a la Junta de Subastas exigir que el proponente cumpliera con un "tipo de producto, servicios o condiciones"[15] que fuesen exclusivas de una marca, empresa o proveedor. Adujo que, Claro había sido el proveedor del DEPR con fondos *E-Rate* por los cinco (5) años anteriores, por lo que, dicho factor lo beneficiaba indebidamente. Además, sostuvo que, dicho criterio no respondía a "criterios objetivos de calidad, funcionalidad, durabilidad y desempeño óptimo del producto o servicio a ser adquirido o contratado"[16], según también exigía el mencionado Artículo 33, *supra*.

En segundo orden, manifestó que, había cumplido cabalmente con el requisito de experiencia en facturación bajo el programa *E-Rate*, por lo que, la Junta de Subastas había actuado

---

[14] *Íd.*, anejo 5. *Véase* también, apéndice 4 del recurso de revisión judicial, págs. 3-21.
[15] 3 LPRA § 9834i.
[16] *Íd.*

irrazonablemente al otorgarle dos (2) puntos bajo el criterio número tres. Precisó que, según autorizado por la Junta de Subastas en el proceso de preguntas y respuestas, había incluido en su propuesta la experiencia de su subcontratista, Truenorth. Indicó que, de haberse considerado dicha experiencia, y de conformidad a las especificaciones del RFP y la tabla de puntuaciones, el resultado de la adjudicación debió haber sido el siguiente: "Categoría 1: Claro 81.44 vs. Liberty 83.11 y Categoría 2: Claro 83.54 vs. Liberty 84.63".[17]

En tercer lugar, sostuvo que, la Junta de Subastas no consideró la experiencia provista sobre servicios *WAN* en el criterio número dos para la segunda categoría. Explicó que, aunque las referencias incluidas no contenían expresamente la palabra *WAN*, sí incluía referencias de servicios *ethernet, network* y comunicaciones.

Por último, adujo que, la Junta de Subastas había violentado la reglamentación federal que exige adjudicar la licitación al postor más costo efectivo y, que el precio sea el factor principal en la evaluación de las propuestas.

Por su parte, en su solicitud de reconsideración, T-Mobile, en esencia, adujo que, la Junta de Subastas había descalificado su propuesta de manera inapropiada, al fundamentar su determinación en "simple and insubstantial irregularities"[18]. Detalló que, el incumplimiento consistente en haber cargado la propuesta al sitio web no constituía un defecto sustancial. Añadió que, ello no concedió ninguna ventaja ni había perjudicado a los demás licitadores, sino que se trataba de una variación menor que no afectaba el contenido ni la calidad de la propuesta.

---

[17] Apéndice 4 del recurso de revisión judicial, pág. 6.
[18] Entrada número 3 del recurso con designación alfanumérica TA2025RA00133 en el SUMAC TA, anejo 5.

Asimismo, T-Mobile sostuvo que, la Junta de Subastas no había comprendido su estructura corporativa, al resolver que no había demostrado su experiencia con el programa *E-Rate* en los cinco (5) años anteriores. Precisó que, T-Mobile Puerto Rico, LLC era una subsidiaria de T-Mobile USA, Inc., la cual había sido fusionada con Sprint, y las tres empresas habían participado por más de una década en el programa *E-Rate*. En ese sentido, puntualizó que, la propuesta había incluido experiencia de T-Mobile en contratos recientes de *E-Rate* con entidades públicas en varios estados de Estados Unidos, lo que cumplía con el requisito en cuestión. Añadió que, la descalificación de la propuesta bajo el pretexto de que la experiencia *E-Rate* no había sido presentada bajo el nombre de T-Mobile Puerto Rico, sino a través de entidades corporativas relacionadas, resultaba en un aplicación arbitraria y discriminatoria de los requisitos del RFP.

De otro lado, sostuvo que, el requisito de contar con cinco (5) años de experiencia en el programa *E-Rate* constituía una imposición local del DEPR que generaba una barrera para los nuevos entrantes al mercado. Así, manifestó que, la determinación de la Junta de Subastas había privado al DEPR de la oportunidad de revisar, analizar y evaluar su propuesta, además de eliminar la posibilidad de que T-Mobile participara en discusiones y negociaciones posteriores.

El 21 de abril de 2025, Claro se opuso a ambas solicitudes mediante *Oposición a Solicitudes de Revisión Administrativa y Auxilio de Jurisdicción presentadas por Liberty Puerto Rico, Inc. y T-Mobile Puerto Rico a razón de la Resolución de Adjudicación del "RFP Núm. PRDE-OC-2025-001 & E-Rate Form 470 #250019131 for the Procurement of Wide Area Network, Internet, Content Filtering, Telecommunications, and Wi-Fi Hotspot Equipment and Services for the Puerto Rico Department of Education – Category I & Category 2",*

*notificada el 25 de marzo de 2025.*[19] Mediante esta, adujo que, la determinación de la Junta de Subastas gozaba de deferencia por ser la agencia con *expertise* en el asunto. En cuanto a la solicitud de T-Mobile, sostuvo que, el RFP disponía expresamente que los proponentes que no cumplieran con los requisitos establecidos podrían ser rechazados o denegados. Adujo que, perdonar el incumplimiento de T-Mobile constituiría un trato preferencial hacia esta, lo cual resultaba prohibido.

Por otra parte, en lo relativo a la solicitud de Liberty, sostuvo que, el resumen presentado por esta para la primera categoría, respecto a la experiencia de Truenorth, había sido genérico e insuficiente para justificar una puntuación mayor a la otorgada. Además, argumentó que, exigir la cantidad de fondos facturados en *E-Rate* constituía una medida válida para evaluar la experiencia de los proponentes.

Adicionalmente, sobre el planteamiento de Liberty en torno a que sus precios eran los más bajos, señaló que, ello no implicaba que la Junta de Subastas careciera de discreción para evaluar la totalidad de las propuestas. Asimismo, puntualizó que, tratándose de la adquisición de servicios de alto costo, la selección no debía descansar exclusivamente en criterios matemáticos, sino que, requería una valoración integral de la tecnología y los recursos ofrecidos, a la luz de las necesidades del DEPR.

Por último, esgrimió que, Liberty no había cumplido con el requisito de cargar electrónicamente una copia exacta de la propuesta a la página web habilitada, lo que debió haber conllevado su descalificación, sin la necesidad de evaluar en los méritos su propuesta.

---

[19] Apéndice 46 del recurso de revisión judicial, págs. 718-737.

Atendidos los escritos de las partes, el 5 de junio de 2025, la Junta Revisora emitió *Resolución*.[20] Por medio de esta, razonó que, carecía de jurisdicción para atender las solicitudes de ambas partes, puesto que, la impugnación planteada estaba relacionada a servicios de naturaleza profesional. En consecuencia, devolvió el caso al DEPR para la continuación de los procedimientos.

Posteriormente, el 24 de junio de 2025, la Junta de Subastas emitió un *Notice of Award – Amended*, a los únicos fines de incluir las advertencias mandatorias sobre el derecho de revisión judicial con el que contaban los proponentes que no estuviesen de acuerdo con la determinación.[21]

Ante ello, el 7 de julio de 2025, tanto Liberty como T-Mobile presentaron nuevamente solicitudes de reconsideración ante la Junta Revisora.[22] En esencia, ambas reprodujeron los mismos argumentos esbozados previamente en sus primeras solicitudes de reconsideración.

Luego, el 11 de julio de 2025, Claro se opuso nuevamente a las solicitudes de reconsideración, y reiteró sus argumentos.[23] Más tarde, el 16 de julio de 2025, Liberty presentó una réplica a la oposición de Claro, a través de la cual, reafirmó su postura.[24]

Del expediente ante nuestra consideración, no surge que la Junta Revisora hubiese atendido las solicitudes presentadas por las partes recurrentes, ni la oposición presentada por Claro.

Así pues, en desacuerdo aún, el 5 de agosto de 2025, Liberty acudió ante este foro revisor mediante recurso de revisión judicial y esgrimió los siguientes señalamientos de error:

---

[20] Apéndice 49 del recurso de revisión judicial, págs. 742-751.
[21] Apéndices 50 y 51 del recurso de revisión judicial, págs. 752-759 y 760-767, respectivamente.
[22] Apéndice 1 del recurso de revisión judicial, págs. 768-789. *Véase* también, entrada número 3 del expediente del recurso con identificación alfanumérica TA2025RA00133 en el SUMAC TA, anejo 10.
[23] Apéndice 57 del recurso de revisión judicial, págs. 838-856.
[24] Apéndice 58 del recurso de revisión judicial, págs. 857-864.

**Primer Señalamiento de Error**
La Junta actuó ilegalmente y ultra vires al utilizar como único factor de evaluación bajo el criterio Núm. 3 del RFP el monto facturado a E-Rate en los pasados cinco (5) años, cuyo factor de evaluación no fue parte del RFP.

**Segundo Señalamiento de Error**
La Junta actuó ilegalmente y ultra vires al utilizar el monto facturado a E-Rate en los pasados cinco (5) años como único factor de evaluación bajo el criterio núm. 3 del RFP por ser un factor "exclusiv[o] de una marca, empresa o proveedor [Claro], en detrimento de los demás suplidores o licitadores [Liberty]." En violación al artículo 33(B) de la Ley 73-2019.

**Tercer Señalamiento de Error**
La Junta actuó ilegalmente y ultra vires al utilizar el monto facturado a E-Rate en los pasados cinco (5) años como único factor de evaluación bajo el criterio núm. 3 del RFP por ser un factor que no responde a "criterios objetivos de calidad, funcionalidad, durabilidad y desempeño óptimo del producto o servicio a ser adquirido o contratado" en violación al artículo 33(A) de la Ley 73-2019.

**Cuarto Señalamiento de Error**
La Junta actuó ilegalmente y ultra vires al no seguir sus propias guías e instrucciones al no considerar los más de $12 millones facturados por Truenorth a E-Rate en los pasados cinco (5) años, lo cual hubiese resultado en quince (15) puntos para Liberty bajo el criterio Núm. 3 del RFP y en ser el postor agraciado del RFP bajo la categoría 1: Liberty 83.11 vs. Claro 81.44, y la categoría 2: Liberty 84.63 vs. Claro 83.54.

**Quinto Señalamiento de Error**
La Junta actuó ilegalmente y ultra vires al no seguir la reglamentación federal y utilizar el monto total facturado a E-Rate en los pasados cinco (5) años como criterio principal de adjudicación sobre el "precio" y el ahorro de $15 millones que representa la oferta de Liberty.

**Sexto Señalamiento de Error**
La Junta actuó ilegalmente y ultra vires al no considerar la experiencia provista por Liberty sobre servicios WAN en el criterio núm. 2 de la categoría núm. 1 del RFP.

Junto a su recurso, Liberty presentó una *Moción en Auxilio de Jurisdicción*.

Al próximo día, T-Mobile también presentó su recurso de revisión judicial y señaló como único error el siguiente:

Erró la Junta Central de Subastas del Departamento de Educación del Gobierno de Puerto Rico al descalificar la propuesta de T-Mobile por unas alegadas irregularidades simples e insustanciales y/o desviaciones menores en su propuesta.

Al igual que Liberty, T-Mobile acompañó su recurso con una *Moción Urgente en Auxilio de Jurisdicción, en Solicitud de Paralización de la Contratación Derivada del RFP NÚM. PRDE-OC-2025-001, o, de Haberse Perfeccionado la misma, que se Deje sin Efecto mientras se Dilucidan los Méritos del Recurso de Revisión.*

El mismo 6 de agosto de 2025, un panel especial de este foro apelativo concedió a la Junta de Subastas hasta el 8 de agosto de 2025, para exponer su posición en cuanto a las solicitudes de auxilio de jurisdicción. Asimismo, le otorgó un término de diez (10) días para expresarse en cuanto a los recursos de revisión judicial presentados por las recurrentes.

En cumplimiento, el 8 de agosto de 2025, la Junta de Subastas del DEPR, por conducto de la Oficina del Procurador General, se opuso a ambas solicitudes de auxilio de jurisdicción.

De otro lado, también el 8 de agosto de 2025, Claro compareció mediante *Oposición a Mociones en Auxilio de Jurisdicción.* Adicionalmente, este presentó una *Solicitud de Consolidación de Recursos*, a los fines de consolidar los recursos de revisión judicial presentados por Liberty y T-Mobile.

Atendidos los escritos en cuestión, el 13 de agosto de 2025, emitimos *Resolución* ordenando la consolidación de los recursos con designación alfanumérica TA2025RA00132 y TA2025RA00133, y declaramos *No Ha Lugar* las solicitudes de auxilio de jurisdicción instadas por Liberty y T-Mobile.

Así las cosas, el 18 de agosto de 2025, la Junta de Subastas del DEPR, a través de la Oficina del Procurador General, presentó su *Alegato Consolidado del Gobierno de Puerto Rico.* Asimismo, en la misma fecha, Claro presentó *Oposición a Recursos de Revisión Judicial.*

Con el beneficio de la comparecencia de las partes, procedemos a resolver.

## II

### A. Revisión de Determinaciones Administrativas

Según es sabido, los tribunales apelativos debemos otorgar amplia deferencia a las decisiones emitidas por las agencias administrativas, puesto que, estas cuentan con vasta experiencia y pericia para atender aquellos asuntos que se les han sido delegados por la Asamblea Legislativa. *Katiria´s Café, Inc. v. Municipio Autónomo de San Juan*, 2025 TSPR 33, 215 DPR ___ (2025); *Hernández Feliciano v. Mun. Quebradillas*, 211 DPR 99, 114 (2023); *OEG v. Martínez Giraud*, 210 DPR 79, 87-89 (2022); *Pérez López v. Depto. Corrección*, 208 DPR 656, 672 (2022); *Super Asphalt v. AFI y otro*, 206 DPR 803, 819 (2021); *Graciani Rodríguez v. Garaje Isla Verde*, 202 DPR 117, 126 (2019); *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35 (2018); *Torres Rivera v. Policía de PR*, 196 DPR 606, 626 (2016); *Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 215 (2012); *Asoc. Fcias. v. Caribe Specialty et al. II*, 179 DPR 923, 940 (2010). Es por ello, que, tales determinaciones suponen una presunción de legalidad y corrección, que a los tribunales nos corresponde respetar, mientras la parte que las impugne no presente prueba suficiente para derrotarlas. *Íd.* No obstante, tal norma no es absoluta, es por lo que, nuestro Máximo Foro ha enfatizado que no podemos imprimirle un sello de corrección, so pretexto de deferencia a las determinaciones administrativas que sean irrazonables, ilegales o contrarias a derecho.

En *Torres Rivera v. Policía de Puerto Rico*, 196 DPR 606, 628 (2016), nuestro Tribunal Supremo resumió las normas básicas en torno al alcance de la revisión judicial de la forma siguiente:

[L]os tribunales deben deferencia a las decisiones de una agencia administrativa, pero tal deferencia cederá cuando: (1) la determinación administrativa no está

basada en evidencia sustancial; (2) el ente administrativo erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) la actuación administrativa lesionó derechos constitucionales fundamentales. Es importante destacar que si el tribunal no se encuentra frente a alguna de esas situaciones, aunque exista más de una interpretación razonable de los hechos procede que se valide la interpretación que realizó la agencia administrativa recurrida.

El criterio rector bajo el cual los tribunales deben revisar las decisiones administrativas es el criterio de razonabilidad. *Hernández Feliciano v. Mun. Quebradillas*, supra, pág. 115; *OEG v. Martínez Giraud*, supra, pág. 90; *Super Asphalt v. AFI y otro*, supra, pág. 820; *Graciani Rodríguez v. Garaje Isla Verde*, supra, pág. 127; *Torres Rivera v. Policía de PR*, supra, pág. 626. Bajo este criterio, se limita la revisión judicial a dirimir si la agencia actuó de forma arbitraria o ilegal, o de manera tan irrazonable que su actuación constituya un abuso de discreción. *Íd.*; *Pérez López v. Depto. Corrección*, supra, pág. 673; *Super Asphalt v. AFI y otro*, supra, pág. 819-820; *Rolón Martínez v. Supte. Policía*, supra, pág. 36; *Batista, Nobbe v. Jta. Directores*, supra, pág. 216.

Bajo este supuesto, la Sección 4.5 de la Ley Núm. 38 del 30 de junio de 2017, 3 LPRA 9675, conocida como la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), "estableció el marco de revisión judicial de las agencias administrativas". *Rolón Martínez v. Supte. Policía*, supra, pág. 35. La intervención del tribunal se limita a tres áreas, a saber: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hecho que realizó la agencia están sostenidas por evidencia sustancial que obra en el expediente administrativo visto en su totalidad, y (3) si las conclusiones de derecho del ente administrativo fueron correctas. *Íd.* págs. 35-36; *Hernández Feliciano v. Mun. Quebradillas*, supra; *OEG v. Martínez Giraud*,

supra*;* pág. 89; *Torres Rivera v. Policía de PR*, supra, págs. 626-627; *Batista, Nobbe v. Jta. Directores*, supra, pág. 217; Sec. 4.5 de la LPAU, 3 LPRA § 9675. Nuestro Máximo Foro, ha expresado que, esta intervención "debe ocurrir cuando la decisión administrativa no se fundamente en evidencia sustancial o cuando la agencia se equivoque en la aplicación de la ley". *Rolón Martínez v. Supte. Policía*, supra, pág. 36. Siendo así, aquellas determinaciones de hechos formuladas por el ente administrativo deberán sostenerse cuando estén basadas en evidencia sustancial que surja del expediente administrativo considerado en su totalidad. *Íd.*; *Hernández Feliciano v. Mun. Quebradillas*, supra; *OEG v. Martínez Giraud,* supra, pág. 90; *Super Asphalt v. AFI y otro,* supra.

Por otro lado, las determinaciones de derecho pueden ser revisadas en su totalidad. *Rolón Martínez v. Supte. Policía*, supra; *Torres Rivera v. Policía de PR*, supra, pág. 627; Sec. 4.5 LPAU, 3 LPRA § 9675. No obstante, los tribunales deberán darles peso y deferencia a las interpretaciones que la agencia realice de aquellas leyes particulares que administra. *Rolón Martínez v. Supte. Policía*, supra, págs. 36-37; *Torres Rivera v. Policía de PR*, supra. El Tribunal Supremo ha dispuesto que, la deferencia que le deben los tribunales a la interpretación que haga el ente administrativo sobre aquellas leyes y reglamentos que le corresponde poner en vigor, cede si la agencia: "(1) erró al aplicar la ley; (2) actuó arbitraria, irrazonable o ilegalmente, o (3) lesionó derechos constitucionales fundamentales. *Íd.* págs. 627-628; *OEG v. Martínez Giraud*, supra.

Finalmente, nuestra más Alta Curia ha expresado que, conforme lo anterior, el criterio administrativo no podrá prevalecer en aquellas instancias donde la interpretación estatutaria realizada por una agencia provoque un resultado incompatible o contrario al propósito para el cual fue aprobada la legislación y la política pública que promueve. Así, "la deferencia judicial al *expertise*

administrativo, concedido cuando las agencias interpretan la ley, tiene que ceder ante actuaciones que resulten irrazonables, ilegales o que conduzcan a la comisión de una injusticia". *Íd.* págs. 90-91.

### B. Requerimiento de Propuestas

Como es sabido, en nuestra jurisdicción, la contratación gubernamental de todo tipo de servicios está revestida del más alto interés público, pues persigue fomentar la inversión adecuada, responsable y eficiente de los recursos del Estado. *St. James Sec. v. AEE*, 213 DPR 366, 377 (2023); *SLG Ortiz-Mateo v. ELA*, 211 DPR 772, 794 (2023); *Super Asphalt v. AFI y otro*, supra, pág. 820; *ECA Gen. Contract. v. Mun. de Mayagüez*, 200 DPR 665, 672 (2018). A esos fines, el gobierno utiliza los procedimientos de subasta o el requerimiento de propuestas como vehículos procesales para la adquisición de bienes y servicios. *Mun. Aguada v. W Const. y Recovery Finance*, 214 DPR 432, 453 (2024); *St. James Sec. v. AEE*, supra; *PR Eco Park et al. v. Mun. de Yauco*, 202 DPR 525, 531 (2019). Por medio de estos, se pretende conseguir los precios más económicos, evitar el favoritismo, la corrupción, el despilfarro, la malversación, la extravagancia y el descuido al otorgarse contratos, así como minimizar los riesgos de incumplimiento. *Mun. Aguada v. W Const. y Recovery Finance*, supra, citando a *Caribbean Communications v. Pol. de P.R.*, 176 DPR 978, 994 (2009); *PR Eco Park et al. v. Mun. de Yauco*, supra; *Transporte Rodríguez v. Jta. Subastas,* 194 DPR 711, 716–717 (2016).

El proceso de subasta tradicional consta de varias etapas y no admite negociación alguna entre la agencia y el licitador luego de sometida la propuesta. *Mun. Aguada v. W Const. y Recovery Finance*, supra, pág. 454. Por el contrario, el mecanismo de requerimiento de propuestas constituye un procedimiento informal y flexible, que permite al proponente negociar con el gobierno y enmendar o revisar su oferta antes de la adjudicación. *Íd.*; *St. James Sec. v. AEE*, supra,

págs. 377-378; *PR Eco Park et al. v. Mun. de Yauco*, supra, págs. 531-532; *R & B Power v. E.L.A.*, 170 DPR 606, 621 (2007). En ese sentido, le confiere a la entidad pública un mayor grado de discreción al considerar una propuesta. *Mun. Aguada v. W Const. y Recovery Finance*, supra; *R & B Power v. E.L.A.*, supra, pág. 623. Además, su uso es común cuando el bien o servicio que interesa adquirir el ente gubernamental involucran aspectos altamente complejos o cuando existen escasos competidores calificados. *Mun. Aguada v. W Const. y Recovery Finance*, supra; *St. James Sec. v. AEE*, supra, pág. 378; *PR Eco Park et al. v. Mun. de Yauco*, supra, pág. 532; *R & B Power v. E.L.A.*, supra, págs. 621-622.

Cabe señalar que, aun cuando se trata de procesos distintos, la subasta tradicional y el requerimiento de propuestas no son del todo incompatibles. *Mun. Aguada v. W Const. y Recovery Finance*, supra, pág. 455; *PR Eco Park et al. v. Mun. de Yauco*, supra; *Caribbean Communications v. Pol. de P.R.*, supra, pág. 998. Ambos gozan de características adjudicativas y ninguno está exento del derecho de revisión judicial. *Mun. Aguada v. W Const. y Recovery Finance*, supra; *PR Eco Park et al. v. Mun. de Yauco*, supra, citando a *R & B Power v. E.L.A.*, supra, pág. 624.

Ahora bien, el Tribunal Supremo de Puerto Rico ha reiterado que las agencias administrativas, de ordinario, se encuentran en mejor posición para evaluar las propuestas o licitaciones ante su consideración, de conformidad a los parámetros establecidos por la ley y los reglamentos aplicables. *Mun. Aguada v. W Const. y Recovery Finance*, supra; *St. James Sec. v. AEE*, supra. De modo que, las agencias administrativas gozan de amplia discreción al momento de considerar, rechazar y adjudicar las subastas a favor de la propuesta que mejor responde a las necesidades del gobierno y al interés del pueblo en general. *Mun. Aguada v. W Const. y Recovery Finance*, supra; *St. James Sec. v. AEE*, supra, citando a *CD Builders*

*v. Mun. Las Piedras*, 196 DPR 336, 349 (2016). En ese sentido, "la selección de un proveedor sobre otros puede conllevar decisiones que descansen, no solo en criterios estrictamente matemáticos, sino en una valoración de la tecnología y los recursos humanos con que cuenta, a la luz de las necesidades presentes y futuras de la agencia". *Mun. Aguada v. W Const. y Recovery Finance*, supra, citando a *A.E.E. v. Maxon*, 163 DPR 434, 439 (2004).

En atención a ello, los tribunales no debemos sustituir el criterio de la agencia concernida, a menos que se demuestre que la decisión adolece de abuso de discreción, arbitrariedad o irracionalidad. *Mun. Aguada v. W Const. y Recovery Finance*, supra, citando a *CD Builders v. Mun. Las Piedras*, supra; *St. James Sec. v. AEE*, supra.

### C. *Ley Núm. 73-2019*

La *Ley de la Administración de Servicios Generales para la Centralización de las Compras del Gobierno de Puerto Rico de 2019*, Ley Núm. 73 de 19 de julio de 2019, según enmendada, regula "los procesos de compras y subastas de bienes, obras y servicios no profesionales en todas las Entidades Gubernamentales y las Entidades Exentas". 3 LPRA § 9831b.

Por medio del referido estatuto, se creó la Junta de Subastas, la cual está facultada para evaluar y adjudicar las subastas del Gobierno de Puerto Rico, a través de un procedimiento uniforme. 3 LPRA § 9836.

En lo pertinente a la controversia ante nuestra consideración, la citada ley establece, en su Artículo 33, *supra*, los estándares generales de evaluación o adjudicación que deben cumplirse en los procesos de subastas, requerimientos de propuestas o requerimientos de cualificaciones. Entre dichos criterios, el mencionado artículo incluye los siguientes:

a) Deberá establecer especificaciones claras, comprensibles y objetivas, que no estén basadas exclusivamente en la apreciación o visión de ningún funcionario o empleado público o consultor externo, y que respondan a criterios objetivos de calidad, funcionalidad, durabilidad y desempeño óptimo del producto o servicio a ser adquirido o contratado.

b) No podrá exigir sin justificación, el cumplimiento con materiales, tipo de producto, servicio o condiciones, que sean exclusivas de una marca, empresa o proveedor, en detrimento de los demás suplidores o licitadores, incluyendo licitadores o manufactureros de Puerto Rico.

[...]

### III

### A.

En primer orden, discutimos lo correspondiente al recurso con designación alfanumérica TA2025RA00132. Por medio de este, Liberty esgrime seis (6) señalamientos de error.

En su **primer** señalamiento de error, Liberty aduce que, la Junta de Subastas actuó *ultra vires* por utilizar como único factor de evaluación, en el criterio número tres, el monto facturado a *E-Rate* en los pasados cinco (5) años, sin que dicho factor hubiese formado parte del RFP. No le asiste la razón.

En primer término, precisamos que, resulta errado el planteamiento de Liberty en cuanto a que, el monto facturado a *E-Rate* constituyó el único factor de evaluación considerado por la Junta de Subastas al evaluar las propuestas. De conformidad al expediente ante nuestra consideración, el proceso de adjudicación constaba de dos fases delimitadas. En la primera, se verificaría el cumplimiento con los requisitos mandatorios. En la segunda, el Comité llevaría a cabo una evaluación técnica de las propuestas, utilizando para ello diversos criterios establecidos en el propio RFP.

Según reseñamos, la evaluación del Comité consideró todos los criterios establecidos en el RFP, ponderando aspectos como el precio de los productos y servicios elegibles e inelegibles, el

desempeño previo en contratos comparables, la experiencia en el programa *E-Rate* y la calidad y conformidad de la propuesta. Por tanto, el argumento de Liberty carece de méritos.

Por otra parte, resulta también errónea la alegación de Liberty sobre que el monto facturado a *E-Rate* no formó parte del RFP. El pliego en cuestión fue claro al disponer que cada proponente debía presentar, **obligatoriamente**, un resumen detallado de su experiencia previa en el programa *E-Rate,* incluyendo su *SPIN,* los años de experiencia y **la cuantía de los fondos recibidos en los cinco (5) años más recientes**.[25] Dicho requisito, insistimos, expresamente consignado en el RFP, formaba parte integral del proceso de evaluación y así fue dispuesto en la convocatoria.

Así pues, resulta evidente que, la Junta de Subastas actuó dentro del marco de autoridad que le confiere la reglamentación aplicable, y evaluó la propuesta de Liberty de conformidad a los criterios previamente anunciados. En consecuencia, razonamos que, el primer error no fue cometido.

En su **segundo** y **tercer** señalamiento de error, Liberty sostiene que, la Junta de Subastas violentó los incisos a y b del Artículo 33 de la Ley Núm. 73-2019, *supra,* al utilizar como único factor de evaluación el monto facturado a *E-Rate* en los pasados cinco (5) años. Plantea que, dicho factor beneficia indebidamente a Claro, y resulta irrelevante para medir la capacidad de los licitadores de cumplir con los servicios requeridos.

De entrada, reiteramos que, del expediente ante nos surge claramente que la Junta de Subastas llevó a cabo una evaluación integral de las propuestas recibidas, considerando todos y cada uno de los factores contenidos en el RFP, más allá de la cuantía de fondos facturados a *E-Rate.* Habiendo resuelto que dicho elemento no fue

---

[25] Apéndice 7 del recurso de revisión judicial, pág. 154.

el único criterio de evaluación, resulta improcedente afirmar que la actuación de la Junta de Subastas configuró una violación al Artículo 33 de la Ley Núm. 73-2019, *supra*, ni que ello representó un beneficio indebido a Claro.

Adicionalmente, cabe precisar que, a juicio de esta segunda instancia judicial, el elemento relativo a los fondos facturados al programa *E-Rate* constituye un criterio objetivo y verificable que permite a la Junta de Subastas conocer la experiencia y la capacidad de los proponentes con el referido programa. Dicho factor, añadido a los demás requisitos, guarda una relación directa con la calidad, la confiabilidad y la capacidad de los licitadores que busca asegurar el DEPR mediante la contratación. No podemos perder de vista que, el proceso en cuestión, no solo involucra la inversión de fondos públicos, sino que tiene un impacto directo en los servicios educativos destinados a la niñez y la juventud del sistema público. Por ello, resulta indispensable la rigurosidad en el proceso de evaluación y selección de propuestas.

A tenor con lo anterior, razonamos que, los errores segundo y tercero tampoco se cometieron.

En su **cuarto** señalamiento de error, Liberty sostiene que, la Junta de Subastas incidió al no considerar los fondos facturados a *E-Rate* por su subcontratista, Truenorth, durante los pasados cinco (5) años. Alega que, de haberse tomado en cuenta dicha información, Liberty hubiese sido el licitador agraciado.

Tras una evaluación detenida del expediente ante nuestra consideración, razonamos que tampoco le asiste la razón.

Según reseñado, durante el proceso de preguntas y respuestas del RFP, la Junta de Subastas estableció que, la experiencia en el programa *E-Rate* constituía un requisito obligatorio que debía ser acreditado directamente por cada proponente. Si bien la Junta de Subastas permitió a los licitadores incluir información

sobre subcontratistas, esta puntualizó que ello **no eximía** al proponente de presentar su propia experiencia *E-Rate* de manera independiente.[26]

Según surge del expediente, Liberty no presentó evidencia que acreditaría su experiencia directa en el programa *E-Rate* por los pasados cinco (5) años.[27] En lugar de ello, incluyó un conglomerado de experiencias de sus subcontratistas, con la expectativa de que, en conjunto, suplieran los requisitos del RFP. Así, en su propuesta, Liberty (1) destacó que había provisto acceso a internet a una escuela en Puerto Rico, así como su participación en el programa *Emergency Connectivity Fund* (ECF); (2) reseñó que su subcontratista, Broadband VI, había prestado servicios *E-Rate* a múltiples escuelas desde 2019, generando más de cien (100) mil dólares en fondos y, (3) resaltó la trayectoria de Truenorth, quien contaba con experiencia *E-Rate* desde 2012 y sobre quince (15) millones de fondos aprobados.[28]

Sin embargo, al analizar cada elemento de manera individual, resulta evidente que, ni Liberty ni ninguna de sus subcontratistas cumplía por sí sola con el requisito de experiencia directa que exigía el RFP. Pretender que la Junta de Subastas evaluara la experiencia de varias compañías como si constituyesen una sola entidad resulta incompatible con los términos claros del RFP, que exigían demostrar experiencia propia del proponente.

Así pues, resulta forzoso concluir que, el cuarto señalamiento de error no se cometió.

A través de su **quinto** señalamiento de error, Liberty arguye que, la Junta de Subastas erró al no seguir la reglamentación federal y otorgarle mayor peso al monto facturado a *E-Rate* en los últimos

---

[26] Apéndice 8 del recurso de revisión judicial, pág. 168.
[27] Apéndice 27 del recurso de revisión judicial, pág. 456.
[28] *Íd.*

cinco (5) años, por encima del precio. Señala que, su propuesta representaba un ahorro de alrededor de quince (15) millones, por lo que debe existir una justificación sólida para rechazar su propuesta. Veamos.

De conformidad al derecho reseñado, nuestro más Alto Foro ha reconocido que, "la selección de un proveedor sobre otros puede conllevar decisiones que descansen, no solo en criterios estrictamente matemáticos, sino en una valoración de la tecnología y los recursos humanos con que cuenta, a la luz de las necesidades presentes y futuras de la agencia". *Mun. Aguada v. W Const. y Recovery Finance*, supra, citando a *A.E.E. v. Maxon*, supra. Dicho de otra manera, si bien el precio resulta importante en un proceso de licitación, este no es el único factor a considerar al momento de evaluar una propuesta. Las agencias gozan de discreción para evaluar otros elementos que garanticen la continuidad, confiabilidad y eficiencia de los servicios a contratar.

En el presente caso, precisamente, la Junta de Subastas no solo consideró el precio de las propuestas, sino que, en el ejercicio válido de su discreción administrativa, también consideró otros aspectos incluidos en el RFP que atienden las necesidades del DEPR. Además, no podemos perder de vista que, la Junta de Subastas determinó que, los precios ofrecidos por Liberty resultaban irrazonablemente más baratos que los precios del mercado. Somos del criterio que, dicha circunstancia, junto a la consideración de los demás criterios del RFP, refuerza la validez de la decisión arribada por la Junta de Subastas.

En vista de ello, concluimos que el quinto señalamiento de error no fue cometido.

Por último, en su **sexto** señalamiento de error, Liberty esgrime que, la Junta de Subastas incidió al no considerar la experiencia provista sobre servicios *WAN* en el criterio número dos de la primera

categoría. Precisa que, aunque no utilizó la palabra *WAN*, la propuesta incluía referencias de servicios de *ethernet y network*.

Una vez más, puntualizamos que, la experiencia provista por Liberty correspondía a sus subcontratistas y no a su propia trayectoria. En el caso específico de servicios *WAN*, la información presentada por Liberty respondió exclusivamente a servicios ofrecidos por Truenorth.

Más en detalle, surge del expediente que, para la primera categoría, en atención a la experiencia del proponente en los pasados cinco (5) años, Liberty presentó únicamente **una** experiencia de servicios ofrecidos a la Academia María Reina.[29] En su documento, consignó las letras "NA"[30] en los renglones correspondientes a *WAN*, *network*, *content filtering* y *telecommunications*. Asimismo, indicó "NA" en el renglón de *total anual value* para cada uno de dichos servicios.

De igual forma, Liberty presentó evidencia para sus dos subcontratistas antes mencionadas. En el caso de Broadband, la información sometida reflejaba servicios prestados a seis (6) escuelas ubicadas en Estados Unidos. Ahora bien, nuevamente, en los renglones de *WAN*, *content filtering* y *telecommunications*, Liberty consignó las letras "NA".[31]

Por otro lado, para Truenorth, Liberty sí incluyó experiencia en servicios *WAN*.[32] No obstante, surge que, dicha experiencia consistía en servicios básicos de mantenimiento provistos al DEPR, los cuales no califican como servicios *WAN* bajo los parámetros del RFP.

---

[29] Apéndice 26 del recurso de revisión judicial, pág. 446.
[30] El *Cambridge English Dictionary* define "n/a" como la abreviatura escrita para "no aplicable", que se utiliza en un formulario para indicar que la información solicitada no será proporcionada porque la pregunta no se refiere a la persona ni a su situación. Asimismo, en su segunda acepción, que alude al comercio, dispone que, esta se utiliza en una lista para indicar que algo no se puede proporcionar. *Véase*, https://dictionary.cambridge.org/us/dictionary/english/n-a (última visita, 29 de agosto de 2025).
[31] Apéndice 26 del recurso de revisión judicial, págs. 447-450.
[32] *Íd.*, pág. 453.

En vista de lo antes esbozado, razonamos correcto el curso decisorio de la Junta de Subastas al asignarle a Liberty una puntuación más baja en el criterio número dos de la primera categoría. Consecuentemente, concluimos que, el sexto error tampoco fue cometido.

**B.**

Resuelto lo anterior, corresponde examinar lo pertinente al recurso con identificación alfanumérica TA2025RA00133.

A través de este, en su único señalamiento de error, T-Mobile aduce que, la Junta de Subastas incidió al descalificar su propuesta por lo que califica como "irregularidades simples e insustanciales".[33] Alega que, tal incumplimiento no constituía motivo suficiente para la descalificación. No le asiste la razón.

En principio, conviene recordar que, la Junta de Subastas descalificó la propuesta de T-Mobile por tres (3) razones específicas, a saber: (1) no cargó una copia de su propuesta a la página web habilitada; (2) la versión presentada en el dispositivo USB no era idéntica a la propuesta original sometida físicamente y, (3) no acreditó su experiencia en el programa *E-Rate* dentro de los cinco (5) años anteriores.

En lo que respecta al primer motivo de descalificación, T-Mobile sostiene que, la omisión de cargar su propuesta a la página web habilitada no debió haber provocado su descalificación, puesto que ya había entregado la propuesta original y su copia en un dispositivo USB. Asimismo, argumenta que, tal incumplimiento no afectaba la capacidad de respuesta ni el alcance de su propuesta. Dichos planteamientos resultan desacertados.

Como bien hemos destacado reiteradamente a lo largo de esta sentencia, la obligación de presentar la propuesta en los tres (3)

---

[33] *Véase,* recurso de revisión judicial identificado con el alfanumérico TA2025RA00133, pág. 15.

formatos requeridos era inequívoca, y el RFP, insistimos, advirtió expresamente que, la falta de cumplimiento con dicho requisito conllevaría la descalificación. Adviértase además que, la Junta de Subastas también concluyó que, la copia sometida en el dispositivo USB tampoco era idéntica a la propuesta original, lo que añadió una segunda causal de descalificación. Permitir la participación de T-Mobile a pesar de los mencionados incumplimientos, sin duda, le hubiese conferido una ventaja indebida a T-Mobile frente a los demás licitadores.

Por otro lado, respecto al tercer motivo de descalificación, T-Mobile intenta justificar su falta de experiencia propia en el programa *E-Rate*, señalando que, es subsidiaria de T-Mobile USA, Inc., y que la propuesta incluyó contratos de dicha corporación. Sin ánimo de repetir, subrayamos que, el RFP dispuso expresamente que, el proponente debía acreditar su experiencia propia con el programa en cuestión. Si la información provista correspondía a T-Mobile USA, Inc., era esa la entidad llamada a presentar su propuesta. Haber tomado en consideración la experiencia de otra entidad, en sustitución de la del proponente, hubiese flexibilizado injustificadamente uno de los requisitos esenciales de participación.

Cabe señalar que, de otra parte, T-Mobile llama la atención que, Claro incumplió con la presentación de ciertos documentos en todos los formatos requeridos y, aun así, no fue descalificado. No obstante, adviértase que, las deficiencias de Claro no recaían sobre requisitos cuya inobservancia estuviera expresamente tipificada en el RFP como causal automática de exclusión. A diferencia de ello, las deficiencias de T-Mobile sí correspondían a requisitos obligatorios que, de no cumplirse, acarreaban inevitablemente la descalificación del proceso.

Finalmente, T-Mobile plantea que, las deficiencias identificadas debieron considerarse como "[variaciones] técnica[s]"[34] y que lo procedente era permitirle subsanar las mismas. No estamos de acuerdo. Una vez más, puntualizamos que, el RFP estableció con total claridad que, el cumplimiento de los requisitos mandatorios constituía una condición indispensable para la validez de las propuestas sometidas, y su incumplimiento resultaría en la descalificación.

Las desviaciones identificadas en la propuesta de T-Mobile de ninguna manera pueden considerarse como "irregularidades simples e insustanciales"[35], como esta pretende. Por el contrario, se trata de fallas que incidían en aspectos sustantivos de la presentación de la propuesta. Plantear que se trató de "irregularidades simples"[36] u "obstáculos formales"[37] ignora la importancia del proceso de licitación, que, en este caso, resulta particularmente pertinente, al estar directamente vinculado a la prestación de servicios en el DEPR.

Así pues, resulta forzoso concluir que, la Junta de Subastas actuó correctamente al descalificar la propuesta de T-Mobile, en cumplimiento estricto con los términos del RFP. Consecuentemente, razonamos que, no se cometió el señalamiento de error esbozado por T-Mobile.

## C.

En fin, luego de un ponderado análisis del caso de marras, y de conformidad con el derecho aplicable antes citado, no encontramos en el expediente ante nuestra consideración actuaciones arbitrarias o caprichosas por la cual no debamos concederle deferencia a la Junta de Subastas.

---

[34] *Íd.*, pág. 29.
[35] *Íd.*, pág. 15.
[36] *Íd.* pág. 15.
[37] *Íd.*

## IV

Por los fundamentos antes expuestos, se confirma la determinación recurrida.

**Notifíquese inmediatamente.**

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones